## In the matter of CATHARINE ROBERTS' will and codicil.

Where the testatrix and her husband left their domicil, in the island of Cuba, for the purpose of visiting or returning to their native country, and the testatrix afterwards returned to Cuba and was there when she received information of her husband's death, and immediately after this event she announced her intention of remaining and fixing her residence permanently at that place, and shortly afterwards made her will there, according to the laws of Cuba ; *Held*, that it was a valid will of personal estate; and that the declarations of the testatrix, declaring her intention to remain in Cuba, were sufficient evidence to establish that as her domicil, although she shortly afterwards died on her voyage to New-York, where her husband was residing at the time of his death.

The actual residence of a person at a particular place, with the intention of remaining there permanently, constitutes that place his domicil, at least until such intention to remain there has been abandoned. And the declarations of the person, where he has no inducement to falsify the truth or to deceive those to whom such declarations are made, are the best evidence of his intention to make his actual residence his permanent residence also.

The *status*, or capacity of the testator to dispose of his personal property by will, depends upon the law of his domicil. But as to the mere formal execution of the will, it seems it is sufficient if it conforms to the laws of the place where it was executed.

It seems also that a will of personal estate is valid if made and executed in conformity to the law of the testator's domicil; although it does not conform in all respects to the law of the place where it is executed. But if the testator is not a citizen of this state, such a will cannot be proved, in this state, upon a commission from the court of chancery, or by the mere production of the foreign probate to the surrogate ; under the special provision of the revised statutes on this subject.

UPON the application of John Calf, the brother and one of the next of kin of Catharine Roberts, the decedent, and

1840.

In the matter of Catharine Roberts' will.

one of the executors named in the codicil to her will, a commission and letters rogatory were issued to the island of Cuba, to take the proof of her will and codicil, alleged to have been executed at the Havana, in 1838. The decedent having no relatives in this country, except her brother John Calf who propounded authenticated copies of the will and codicil for probate, the commission and letters rogatory were issued without notice, and were executed ex parte. Upon the return thereof, T. Vredenburgh of New Brighton, who had been appointed, by the surrogate of Richmond county, administrator of the estate of the deceased, came in as an intervener to resist the establishment of the will and codicil; as the proper representative of the rights of her other next of kin, who resided in England. The chancellor thereupon directed an issue to be formed and tried, between the proponent of the will and codicil, and the administrator, for the purpose of ascertaining the fact whether the decedent was domiciled in Cuba, or in this state, at the time such will and codicil purported to have been executed; they not having been executed in the form prescribed by the revised statutes of this state. A new commission was also issued to take further proof on the subject. The administrator afterwards died, so that there were no longer any parties to try the issue. And Calf, the proponent of the will and codicil, thereupon applied to the court to have the order for an issue discharged; and that the will and codicil might be established by the court, upon the testimony taken under the several commissions, and letters rogatory which had been duly executed and returned.

*J. B. Purroy*, as counsel for Calf the executor, insisted that the proof conclusively showed that the testatrix was domiciled in Cuba at the time of the execution of the will and codicil; and that the will and codicil were duly executed according to the law of Spain to pass her personal estate.

*F. S. Kinney,* who was the solicitor for the administrator in his life-time, had notice of the application; but as he did not profess to appear for any one who now had any interest in opposing the probate of the will and codicil, the chancellor decided that he had no right to be heard in opposition to the probate, or to the motion to discharge the order for an issue. The proofs were thereupon submitted to the court upon the ex parte argument of the counsel of Calf, the executor named in the codicil.

THE CHANCELLOR. The petition presented to this court, in February last, by the surviving brothers and sisters of Catherine Roberts, shows that all the next of kin who would be entiled to share in her estate, in case of an intestacy, except the children of her deceased brother W. Calf, are willing and anxious that this will and codicil should be established. It further appears, by the affidavit of the proponent, that he and the other surviving brothers and sisters have executed an assignment for the benefit of those children; putting them upon the same footing in reference to the estate, as if their father had survived Mrs. Roberts, so as to take his share of the estate under the will. Under such circumstances, the statute having authorized the court, in its discretion, to dispense with a notice to the next of kin where a notice should be deemed unnecessary, I shall discharge the order for an issue, and proceed to decide the question as to the validity of the will and codicil; without any further notice to the next of kin of the decedent who are out of this country. But as the personal representatives of the deceased administrator have had no notice of this application, the order for the issue must be discharged without prejudice to their right, upon the settlement of his account as the administrator of the estate of Mrs. Roberts, to claim such compensation as he may have been equitably entitled to, if any, for expenses incurred by him in resisting the probate of this will and codicil; in case it shall appear that such expenditures were made in good faith, and upon reasonable grounds of belief

CASES IN CHANCERY.

that the will and codicil were not duly executed to pass personal property.

The facts of the case, as established by the testimony taken under the commissions and letters rogatory, which have been duly executed in the island of Cuba, are substantially as follows : Cornelius Roberts and his wife, who were natives of Great Britain, went to Cuba more than thirty years since, where they became domiciled, and were the owners of two or three coffee and sugar plantations, in succession. In 1832 or 1833, they left Cuba for the purpose of visiting their native country. But it does not appear that they at that time contemplated a permanent removal from the island, either for the purpose of resuming their domicil of origin or of settling elsewhere ; though they disposed of most of their property before they left ; leaving, however, their house fitted up and in a situation to be occupied by them on their return. As there is no evidence of intention to abandon their acquired domicil, at that time, the legal presumption is that such domicil continued, as well after as before they left it upon their last visit to their native country. Indeed, the evidence show that at that time they contemplated a return there to reside ; or at least, that they had not then made up their minds to change their domicil. They subsequently came to New Brighton, on Staten Island, where both remained some time ; and the husband finally died there, about the close of the year 1837, after his wife had returned to Cuba to see to their property which remained at that island. The testimony leaves it uncertain whether the husband and wife, previous to his death, had abandoned the intention of returning to Cuba to reside, and had concluded to fix their residence in this state ; though it appears that the existence of the Asiatic cholera at the Havana was probably the reason why they did not, upon their return from England, go directly there. It is probably unnecessary to decide the question whether the domicil of the husband was in fact changed from Matanzas, to New Brighton ; where he was either temporarily or permanently located at the time of his

*1840.*

*In the matter of Catharine Roberts' will.*

death. For even if that was the case, the testimony taken

under the last commission, and letters rogatory, fully estab-
lishes the fact, that Mrs. Roberts, immediately after the
death of her husband, distinctly announced her intention of
fixing her residence in Cuba, where she then was. Colo-
nel Allyon, who appears to have been an intimate friend
and acquaintance both of her and of Mr. Roberts, testifies
that after she had heard of the death of her husband, and
while she was staying in his family, as a guest upon the
invitation of himself and his wife, she declared her inten-
tion to be to return to that place to reside, after she should
have settled the affairs of her husband in this state. And
she wished to re-purchase the coffee plantation which she
and her husband formerly owned near Matanzas, for the
purpose of making that her permanent residence ; as she
said she had always enjoyed perfect health at that place.
The wife of Col. Allyon also testifies that the decedent
told her, after she had heard of the death of her husband,
that the climate of her native country and the United
States disagreed very much with her health, and for that
reason that she had resolved to continue her domicil in
Cuba where she acquired her property, and where the cli-
mate agreed with her health ; adding, that she was going
to take steps to re-purchase the coffee plantation which
formerly belonged to her, on which she had always en-
joyed good health. And the testimony of these two very
respectable witnesses is corroborated by that of two or
three others of her acquaintance ; to whom she made simi-
lar declarations of her intentions to continue her residence
in Cuba, and to return there as soon as she should have
settled the affairs of her husband in this state.

These were not mere declarations of a future intention
to change an actual residence, from Staten Island to the
island of Cuba, for the purpose of changing her domicil.
Such declarations, I admit, would *not*, without an actual
removal from the former place of residence, be sufficient to
constitute a change of domicil. But in this case, it must
be recollected, that at the time the declarations were made

her husband was dead ; and she, having no family, was actually residing in Cuba, where she declared it to be her intention to fix her permanent residence for the remainder of her life. Although it may be difficult to give any general definition of a domicil which will apply to all cases, and Lord Alvanley thought *Bynkershoek* was wise in not hazarding a definition of the term, I think it cannot be doubted that the actual residence of an individual at a particular place, with the *animus manendi,* or a fixed and settled determination to make that his permanent residence for the remainder of his life, constitutes that place his domicil ; at least until there is some evidence that his intention to remain there has been abandoned. And the declarations of the party himself, where he can have no object or inducement to falsify the truth or to deceive those to whom such declarations are made, are the best evidence of his intention to make his actual residence his permanent residence also. Here the declarations of the decedent appear to have been repeatedly and deliberately made, at different times and to various persons ; and I think there can be no reasonable doubt that she intended what she said. The conclusion, therefore, at which I have arrived, from the evidence in this case, is that at the time of making this will and codicil the decedent was domiciled in Cuba. And the testimony shows conclusively that they were executed in due form to convey her property, whether moveable or immoveable, according to the Spanish law which was in force in that island ; although they were not signed and witnessed in the form required by the revised statutes, as to wills of real or personal property executed here.

There appears to be some difference of opinion, among foreign jurists, whether a will of personal estate, or moveable property as it is called by the civilians, in which the testator has complied with the forms and solemnities required by the *lex loci actus,* is a valid testamentary disposition of such property ; although, in the form of its execution, such will does not conform to the requirements of the law of the testator's domicil. The better opinion,

however, appears to be, that so far as regards the mere formal execution of the testament, it is sufficient if it conforms to the law of the country where the will is made ; in accordance with the maxim, *locus regit actum.* (*See* 17 *Guyot's Repert. De Juris. art. Testament,* 186. 4 *Burge's Col. and Foreign Law,* 583. *Civil Code of Louis. art.* 1589.) Probably the testament may also be valid, if made and executed in conformity to the law of the testator's domicil ; although it does not conform, in all respects, to the *lex loci actus.* (*See Target's opinion in the case of the Dutchess of Kingston's will,* 1 *Collect. Jur.* 324. *Story's Confl. of Laws,* 391. 4 *Burge's Col. and For. Law,* 582, 584, 590.) And it appears to be the generally received doctrine, at the present day, that the *status* or capacity of the testator to dispose of his personal estate by will, depends upon the law of his domicil.

Our revised statutes seem to contemplate the validity of a will of personal property, by a citizen of this state, if made in conformity to the requirements of our law ; although executed out of this state, and in a place where the local laws require the adoption of a different form. This appears to be a distinct recognition of the principle that the will may be valid, if made and executed in conformity with the law of the testator's domicil. (2 *R. S. 2d ed. p.* 12, § 69.) The statute also, in express terms, authorizes a will personally executed out of the state, by a person not domiciled here, to be admitted to probate, provided it is duly executed according to the laws of the state or country where the same was made ; and prohibits all other foreign wills from being admitted to probate, under the special provisions incorporated into the statutes by the amendments of April, 1830. As those provisions refer to the mode of establishing foreign wills under a commission to be issued by this court, or upon the production of the foreign probate, alone to the surrogate without further proof, they do not necessarily exclude the idea that a will of personal property made by a testator domiciled abroad may be valid, if executed according to the law of his domicil ;

*1840.*

In the matter of Catharine Roberts' will.

although the form of its execution is not in accordance with the law of the place where he actually executed it, during a temporary absence from his place of residence. But the mode of proving such a will here, if it is valid, as I think it would be, must be different from that which is prescribed by these special provisions of the revised statutes relative to foreign wills; and this court has no jurisdiction in such a case.

The conclusion at which I have arrived, in relation to the actual domicil of Mrs. Roberts at the time of executing her will and codicil, steers clear of any of these questions; which must have arisen if it had appeared, from the evidence, that she had abandoned her domicil in Cuba for the purpose of resuming her domicil of origin in England, or that she had fixed her permanent residence in this state. Here the *lex loci actus* and the *lex domicilii* are the same; and they concur with the *lex fori* in declaring that the instruments propounded, as the will and codicil of the decedent, were valid testamentary dispositions of her personal estate. And they are entitled to probate here, under the commissions and letters rogatory, issued in this case, which have been executed under the authority of this court.

The usual decree must therefore be entered, establishing the authenticated copies of those instruments, which were returned with the first commission, as the last will and testament of the testatrix in relation to her personal estate; and directing that such decree be transmitted to the surrogate of the county of Richmond, that he may record the same; and directing him to issue letters testamentary or of administration thereon, in the same manner as if the said will and codicil had been duly proved before him.