By the Court. Woodruff, J.
We held, in the case of Barry v. Bockover, at the General Term of April, 1858, that a defendant, whose family have for more than seven years occupied, and still occupy, a dwelling in Jersey city, in the state of New Jersey, hired by him, and who habitually passes the night of each day, and the Sabbath, with his family, is a non-resident of this State, within the meaning of our present statute authorizing an attachment of the property of a defendant in an action, although such defendant was engaged in business as a merchant in this city, spent eight hours of every business day (unless sick, or absent on business of his mercantile firm,) in this city; had all his business capital invested in such business; kept his individual hank account here; and had selected New Jersey as his family *683 residence solely on account of its convenience for access to the business portion of this city, and for economy in living; and, notwithstanding process in the action, might at any time within the business hours of the day, have been served upon him personally, and was in fact served upon him in the action in which the attachment was issued.
It is therefore to be deemed settled, in this Court, that the right of a plaintiff to have the property of a defendant attached on the ground of his non-residence, does not depend upon the question whether the defendant can be served with the summons in the action, but that the attachment may issue, however convenient it may be to serve the defendant personally with process.
Also, that the carrying on of a mercantile business in this city, and staying within our limits, for the purposes of business, during all the hours usually devoted to business here, do not alone constitute residence within the meaning of the statute. And it follows, as a necessary consequence of this proposition, and is involved in the principle of the ruling, that, whether a man’s absence from his family be for eight hours in each day, or six days in each week, if he has. a family living in a neighboring State, for whom he provides, to whom he resorts for comfort, relaxation and repose, and with whom he abides whenever the immediate demands of his business upon his attention will permit; whenever sickness disables him from conducting that business; and when those days successively return on which business ceases and man rests from his labor; he resides-in such neighboring State, where (in every proper sense, as understood no less by those who are learned in the law, than by the common intelligence of every-day life,) is his home.
We did not deem it necessary for the purposes of that case, and do not deem it necessary for the purposes of the present, to review or recite the various learning to be found in the books, upon the question, how far residence and domicile are synonymous, or how, in certain eases, they differ.
In the case above referred to, the State of New Jersey was the defendant’s domicile, within every definition of that term, and it was not less clearly his residence. It was his abiding-place. He left it, with intent to return so soon as his labors were remitted: He returned to it with intent to remain until *684 called to resume those labors. Hew York was his place of business, Hew Jersey his place of abode. In Hew York was his workshop. In Hew Jersey was his house, his shelter, his fireside, his bed and board. We know of no definition of either domicil or residence which the former will satisfy, nor of any in which the latter will not answer in every particular.
And for like reasons we did not then, and do not now, think it necessary to review the cases in this State in which a man has been held a non-resident within the “spirit” of our former statutes, who has an actual residence out of the State, though he have a family within this State, or have a domicil here, (see those cases collected and discussed by Mr. Justice James in 16 How. P. R. 77, and further by Mr. Justice Hoffman at Special Term in this case.) That long-continued absence in a fixed location, carrying on a business permanent in its nature; or long-continued absence in such location for the purposes of business, the duration of which was uncertain; or absence for several months, in pursuance of an intention to make a permanent location for residence and for business, and an actual location and commencement of such business, though the removal of the family have not yet taken place—should be held to constitute non-residence within the spirit of those statutes, proves nothing in reference to such a case as the one above referred to: the question of their present actual residence, was the question considered in those cases, and was decided in favor of the attaching creditor.
But in no case has it been decided that where the debtor lives with his family in this State, returning to them from day to day or from week to week, he is an actual non-resident, (even within the “spirit” of any law touching non-residents,) merely because he passes the business hours of the day, or the business days of the week, when his health will permit, and his business requires it, in his store or manufactory without the bounds of the State.
In such a case the liability of the party to taxation, to render service as a juror, or to enrolment as one of the militia, we apprehend would not be seriously questioned.
Ordinarily one’s residence and domicile (if they do not always mean the same thing) are in fact the same, and where .they so concur they are that place which we all mean when we speak of one’s home.
*685 And it may safely be asserted that where one has a home, as that term is ordinarily used and understood among men, and he habitually resorts to that place for comfort, rest, and relaxation from the cares of business and restoration to health, and there abides in the intervals when business does not call—that is his residence, both in the common and legal meaning of the term. And to one who has such a home, and habitually uses it as such, a place of business elsewhere, is not his residence within any proper definition of the term.
When the question, where is his residence, arises, some of the proofs, or the indicia by which the place is to be determined, vary with the circumstances of the party. One has a family, another has none—one lives in a state of alienation and separation from his family, another lives with them—one owns or hires a dwelling-house, another has lodgings at an inn—and another may have a much more uncertain shelter. None of these circumstances are necessarily alone conclusive—they are not decisive tests—they are only aids to an answer to the question to be considered in connection with all other pertinent facts which may appear.
So when the fact of residence in a place is ascertained or conceded, it is to be deemed to continue until there is proof of a change of location, with intent to make such location a new home, in the sense above already described, not merely for a temporary purpose, but with a fixed purpose to remain, and without a present intention to return when some temporary purpose is accomplished.
And again, it is not enough that one intends to change his residence. The intent and the fact of such change must concur. Nor is it enough that he intends to change his residence, and sincerely believes that what "he has done amounts in law to a change of his residence, his opinion will not affect the question, " if the actual change have not taken place.
Enough has now been said (and probably more than enough) . to make our views of the case before us intelligible.
The defendant, Wilson, was confessedly a resident of Nor-walk, in the State of Connecticut, in the year 1856.
It will throw light upon the proper weight to be given to his affidavit (upon which the claim to discharge the attachment *686 mainly depends), if it be noticed, that he states that he then “ resolved to become a permanent resident of the city of Hew York,” and that he further states that “ during the whole and any part of the year 1857, and so much of the year 1858 as has elapsed, he has been and now is a resident of the State of Hew York.”
What then did he do in 1856, which made him a resident of the State of Hew York ? The answer to this question may perhaps aid us not only in determining what he means when he swears to residence, and what sort of sojourn in Hew York he intended by what he calls a resolution to become a permanent resident, and what he understands and means by “permanent residence.”
He left his family in Horwalk on the farm, theretofore occupied by them, came to Hew York on Monday, devoted himself to his business here, sometimes until Wednesday, and then returning to his family, and again returning to Hew York on Thursday—but usually staying in Hew York until Saturday, and then returning to his family in Horwalk. While in the city boarding at a hotel as an ordinary guest, and occupying a bedroom only—and this continued until the fall of 1857.
After what has been already said of such a course and habit of life, it is only necessary to add, that this neither in fact nor in law made him a resident of the city of Hew York. And if we assume that in doing this he did, what he states he resolved to do, we see what he means when he says he resolved to become a “ permanent resident” of the city of Hew York.
In this there is no doubt intimated of Mr. Wilson’s sincerity. On the contrary, the more sincere he is, and the more confidently he insists that he was a resident of Hew York at that time, the more probable it is that his apprehension of the force and meaning of the terms employed in his affidavit is inaccurate, and that if he had explained in detail whát he means by “ permanent,” and, “ temporary,” “ home,” and “ residence,” or rather if he had given us the particulars embraced in those words, instead of testifying in terms, which, if taken in their legal signification, dispose of the whole question upon his mere opinion, it might have appeared that his affidavit is not less inaccurate in other respects, by reason of similar mistakes in his judgment on the subject.
*687 He was then, a resident of Norwalk down to the time of his failure or embarrassment in business in the fall of 1857;° and he was then admonished by a friend that he might be deemed a non-resident, and it was best to establish “ the ostensible as well as actual character of his residence by unequivocal indications.” It is doubtless true, that the motive with which a change of residence is made, is wholly immaterial, if the change be an actual change, with intent permanently to abide in the new location. But in weighing the evidence, and where there is a conflict of testimony and circumstances detracting from the evidence of the alleged change, the motive under which the party is acting, and the purpose he has in view, may properly be regarded in determining what was the actual intent.
The question we are considering is not whether, if he intended an "actual “permanent residence” in New York, and in pursuance of that intent brought his family here; took possession, of apartments here as his and their “ only home,” and occupied them without any intention to return to Norwalk when a temporary purpose was accomplished, that would make him a resident of this city ? But the very question is, what was his intent in these respects, and what did he do ?
He conveyed his farm and the chattels connected therewith to his son, and when he became embarrassed the deed was placed on record. But that farm has been as open to him and to his family, and has been as freely used as a home to him and them, according to his own affidavit, as it ever was before. Whether his wife’s farm is still retained, or whether that is the farm referred to, is left in doubt by the affidavits.
He took rooms in October, 1857, at a hotel in this city, and with his wife and child, occupied them for three months, paying his bills weekly, but then gave up the apartments, and has not since had any permanent apartment in the hotel; nor does it appear, that he was in the city at all afterwards, until after one, if not two, of the attachments were issued which it is moved to discharge.
It is shown that his child was sick; and that, under the advice of his physicians, was a sufficient reason for taking him from the city. So, also, that Mr. Wilson was sick; and that, if he was too ill to be removed, was a very satisfactory reason for his not *688 returning until sufficiently recovered. But it is not shown that his child continued' ill—nor that he himself might not have returned, if in truth this was his home. Such continued absence would, however, under the circumstances, be far less significant if it were not, that, according to the tenor of his own affidavit, that of Mr. Hendrix, and that of his physician, it is apparent that it was because he had no motive to be here; either because he could not attend to business, or because his firm had suspended payment, and his presence in the city was not deemed so important as it had been on former occasions. And since the month of May, when he has been able to attend to his affairs, he has been merely an occasional transient lodger at the hotel—his family residing at Norwalk.
The indication is not slight, that the purpose under which his family were brought to the hotel, was to continue here only until the embarrassments of his firm had ceased, and with an expectation of their returning to Norwalk, or, if any more protracted stay was contemplated, that the design was abandoned some time before these attachments were issued; and that his subsequent visits to the city were only occasional and .for purposes of business, while his actual residence was with his family at Norwalk.
There are other statements in Mr. Wilson’s affidavit which tend strongly to support the motion for the discharge of the attachments, and it is doubtless true that if that affidavit is to be taken without qualification, and in the very terms therein employed, it would prevail.
Among the other statements, is one, that his wife and child returned to New York in March, and resumed the apartments they had before occupied. With what intent and purpose did they come ? How long did they propose to remain ? How long did they in fact remain? His affidavit does not inform us.
He states that when he and his family left in January, some of their personal property was left there. What property ? Hów far did its character indicate an intention to return ? His affidavit is silent on this subject. While another witness states that he gave up his apartments, and neither he nor his family have ever had any permanent apartments there since.
Is it usual for actual residents to have no house nor apart? *689 ments, by a tenure more permanent than to take and occupy from time to time such rooms, as happen at the moment to be vacant at a hotel ? Probably we cannot say that it is not, and yet we cannot avoid the feeling of surprise, if it be so.
So, also, he states that it has long been his resolution not to occupy a house in New York, until he owned one, and he has conferred with several of his friends, and made efforts to obtain an eligible property in the city, wherein to have himself and his family permanently established. At what time, during the long period here mentioned, did he make these efforts ? Was it before he went to Norwalk to reside ? With whom did he confer? What were the efforts which he made ? And did he even in fact intend to purchase a house here, and if so, when did he have such an intention?
It would seem strange that, in relation to a fact so important. as this on the question of a change of residence, some, at least, of these particulars have not been disclosed.
The review thus given of the affidavit of Mr. Wilson may, perhaps, be deemed minute and critical. But it should be borne in mind that this is the main affidavit upon which the motion is founded—the motion is a very important one to all the parties —the affidavit comes from one who knows all the facts, and some of the facts stated relate to the operations of his own mind, and it is reasonable to expect, under such circumstances, and especially when a severe contest might well be anticipated, a statement less liable to abatement in the particulars above referred, to.
We do not think it necessary to giye a recital of the details found in the numerous affidavits read in opposition to the motion. They tend to show the habits of Mr. Wilson, not only down to 1857, but since; down to the time when the motion was noticed, bearing on the question of residence, and without apparent change in that respect.—The belief of his neighbors and acquaintances in Norwalk founded thereon, or derived from their acquaintance with him.—The efforts made to find him in this city,
«—The apparently transient character of his lodging at the hotels here, from time to time.—The general reputation at Norwalk induced by his habitual actual presence there, as in former years. —The action of the public officers there based upon all the circumstances. And other particulars of less moment.
*690 On the other hand, Mr. Wilson is corroborated, in some particulars of an opposite tendency.
Without entering into any further detailed discussion of the particulars of these affidavits, it must suffice to say that, upon a careful examination of all the affidavits, we are not satisfied that the conclusion of the Judge, at Special Term, that, as matter of fact, Mr. Wilson was a resident of the State of Connecticut when these attachments were issued, was clearly wrong.
The controversy is rather about facts than about the legal principles involved. As to the meaning of the term residence, or non-residence, in reference to this motion, we think there is no ground for difference.
We are sitting as an appellate tribunal, upon a question of fact arising on conflicting affidavits and doubtful circumstances. We should not reverse an order, unless clearly satisfied that the finding of the Judge was wrong. We incline rather to the opinion that, sitting as jurors and acting under instructions touching the law, such as we deem the law to require, we should come to the same conclusion.
The order should be affirmed.
Pierrepont, J., dissented: All the other Justices concurred in the opinion of Mr. Justice Woodruff.
Order affirmed, with costs,