In the Matter of the Estate of JAMES A. TROWBRIDGE, Deceased.

THE STATE OF CONNECTICUT, Appellant; THE STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.

284

(Argued January 2, 1935; decided February 26, 1935.)

*T. Ludlow Chrystie, William H. Blodgett, Farwell Knapp* and *Thomas Witter Chrystie* for appellant. The legal conclusion of New York domicile must be changed if it is conclusively established that decedent intended to continue to live in Connecticut as his fixed and permanent home. (*Dickinson* v. *Brookline*, 181 Mass. 195; *National City Bank* v. *Hotchkiss*, 231 U. S. 50; *Matter of Paris*, 107 Misc. Rep. 463; *Kerby* v. *Charlestown*, 78 N. H. 301; *Gilbert* v. *David*, 235 U. S. 561; *Rosenberg* v. *Commissioner of Internal Revenue*, 37 Fed. Rep. [2d] 808; *Douglas* v. *Douglas*, 12 Eq. 617; *Commonwealth* v. *Davis*,

187 N. E. Rep. 33; *Feehan* v. *Tax Commission,* 237 Mass. 169; *Matter of Dorrance,* 309 Penn. St. 151; 288 U. S. 617; *Matter of Beechwood,* 142 Misc. Rep. 400; *Matter of Sedgwick,* 223 Fed. Rep. 655; *Bowen* v. *Commonwealth,* 126 Va. 182; *Holt* v. *Hendee,* 248 Ill. 288.) Declarations and acts made and performed by decedent before his death do not obviate the significance of all his acts and statements indicating that he intended to continue to live in Connecticut as his fixed and permanent home. (*Matter of Lydig,* 191 App. Div. 117; *Matter of Sedgwick,* 223 Fed. Rep. 655; *Archer* v. *Civil Service Comm.,* 26 Pac. Rep. [2d] 41; *Matter of Lachenmeyer,* 144 Misc. Rep. 678; *Matter of Mesa y Hernandez,* 172 App. Div. 467; 219 N. Y. 566; *Matter of Chadwick,* 109 Misc. Rep. 696; *Matter of Steer,* 3 H. & N. 594; *Matter of Morgan,* 95 Misc. Rep. 451; 176 App. Div. 909; *Curtis* v. *Curtis,* 185 App. Div. 391; *Chaine* v. *Wilson,* 1 Bosw. 673; *Attorney-General* v. *Yule & Mercantile Bank of India,* 145 L. T. 9; *Dickinson* v. *Brookline,* 181 Mass. 195; *Thayer* v. *Boston,* 124 Mass. 132.)

*Edgar Hirschberg* for respondent. The question to be determined is not a question of residence but is a question of domicile. (*Matter of Newcomb,* 192 N. Y. 238; *Matter of Martin,* 173 App. Div. 1; *Matter of Harkness,* 183 App. Div. 396; *Matter of Frick,* 116 Misc. Rep. 448; *Matter of Lange,* 233 App. Div. 716; *United States Trust Co.* v. *Hart,* 150 App. Div. 413; *Matter of Blumenthal,* 101 Misc. Rep. 83; 186 App. Div. 944; *Matter of Seymour,* 107 Misc. Rep. 330; *Dupuy* v. *Wurtz,* 53 N. Y. 556; *Matter of Wendel,* 144 Misc. Rep. 467.) The findings of fact are supported by the evidence. (*Bassett* v. *Wheeler,* 84 N. Y. 466; *De Meli* v. *De Meli,* 120 N. Y. 485.) The question whether a domicile has been changed is one of fact rather than of law and the burden of proof rests upon the party who alleges the change. (*Matter of New-*

*comb*, 192 N. Y. 238; *Dupuy* v. *Wurtz*, 53 N. Y. 556; *Matter of Lyon*, 117 Misc. Rep. 189.) A person may select and make his own domicile and no one may let or hinder. (*Matter of Newcomb*, 192 N. Y. 238.)

*Frank H. Sincerbeaux* for executors of James A. Trowbridge, deceased. The order appealed from is a final order and as such is appealable to the Court of Appeals. (*Brown* v. *Feek*, 204 N. Y. 238; *Albany Hospital* v. *Albany Guardian Society*, 214 N. Y. 435; *Sinclair* v. *Purdy*, 235 N. Y. 245; *Matter of City of New York* [*Staten Island Proceeding*], 237 N. Y. 275; *United States Trust Co.* v. *Chefdebien*, 223 N. Y. 657.)

LOUGHRAN, J. When leave was granted to the State of Connecticut to take this appeal it was held that the order entered upon the decision of the Appellate Division is one which finally determines a special proceeding. (N. Y. Const. art. VI, § 7, subd. 5; Civ. Prac. Act, § 588, subd. 5.) That aspect of the record will first be discussed.

James A. Trowbridge died at Noroton, Connecticut, May 30, 1931. He left a will which was admitted to probate by the Surrogate's Court of the county of New York. The executors to whom letters testamentary were issued then presented to that court a petition entitled, " In the Matter of the Estate Tax upon the Estate of James A. Trowbridge, deceased," which recited that there was " a question as to whether decedent died a resident of New York or Connecticut; * * * that it will be to the best interests of said estate and that of the persons interested therein that the question of the residence of the decedent be litigated before a Surrogate of New York County, in order that a single decree be binding upon the States of New York and Connecticut." The prayer of the petitioners was " that the question of the residence of the decedent be referred to a referee to take evidence as to the residence of the decedent and report the same, together with his opinion, to the Surrogate for his determination, with like force and effect as if this

petition had alleged that the decedent was a resident of the State of Connecticut and the State Tax Commission of the State of New York had controverted the claim of the executors in that regard and had alleged that the decedent was at the time of his death a resident of the State of New York." The petition was granted by an order which provided " that the State of Connecticut be permitted to intervene in this proceeding to the end that the question of whether the decedent was a resident of the State of New York or a resident of the State of Connecticut at the time of his death be determined in this proceeding, and that the State of Connecticut be permitted to litigate that question as a proper party in this proceeding." This order was entered upon the express consent of the respondent, the State Tax Commission of this State. Without reservation, Connecticut accepted and fully availed itself of the license so tendered to it.

The report of the referee includes all proof submitted to him and makes findings of fact and a conclusion of law that the domicile of Mr. Trowbridge at his death was in the city and county of New York, State of New York. Upon the record thus made, Connecticut moved for an order adjudging that Mr. Trowbridge died a non-resident of the State of New York and a resident of Noroton, Connecticut. The motion was denied. An order was made confirming the report of the referee upon the application of the State Tax Commission of this State, and adjudging " that the decedent, at the time of his death on May 30, 1931, was domiciled in and a resident of the city and county of New York in the State of New York." The Appellate Division has unanimously affirmed this order.

The decision of the Appellate Division, as we have held, has the finality requisite to review of its order by this court. The reasons for that ruling may be briefly stated.

The purpose of this proceeding was the establishment of a basis for the tax liability of the estate of Mr. Trowbridge to this State and to Connecticut. For that purpose, Connecticut was bidden to contest in the Surrogate's Court of the county of New York the issue whether at his death Mr. Trowbridge was domiciled in Connecticut or in this State. That court had general jurisdiction to administer justice in all matters relating to the affairs of Mr. Trowbridge and to determine all questions, legal or equitable, arising between parties who voluntarily appeared in any proceeding invoking that broad power. (Surr. Ct. Act, § 40.) It had also specific authority to determine all questions in respect of the tax to be imposed upon this estate under article 10-C of the Tax Law (Cons. Laws, ch. 60), whether Mr. Trowbridge died a resident or non-resident of the State. (Tax Law, § 249-t.) Although the form into which this proceeding has been cast is not in terms dictated by law or rule, the direction that the issue of domicile be separately tried was fully warranted. (Surr. Ct. Act, §§ 66, 316; Civ. Prac. Act, § 443; *Matter of Cook*, 244 N. Y. 63; *Matter of Hyde*, 218 N. Y. 55.)

It is presumed that Connecticut intervened in the proceeding with recognition that the decree to be made would be " conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained." (Surr. Ct. Act, § 80.) The result is that, in so far as any tax liability of the estate of Mr. Trowbridge necessarily depends upon the situs of his domicile at his death, Connecticut is presently bound by the decision below that his domicile was then in this State. (*Amherst College* v. *Ritch*, 151 N. Y. 282, 343.) The order of the Appellate Division has finally determined this proceeding against the appellant State of Connecticut and the appeal of that State is properly here. (*Matter of City of New York* [*Staten Island Proceeding*], 237 N. Y. 275.)

As we turn to the merits, it is to be observed that the existence of none of the evidentiary facts is disputed.

Even so, as the respondent reminds us, if the ultimate conclusion to be found from the conceded proof may fairly be the subject of differing points of view in reasonable minds, this appeal must fail. Mr. Trowbridge, however, had but one domicile when he died. What must be here decided is whether all the facts tending to show that his domicile was then in Connecticut conclusively overbalance all the facts tending to show that he was at that time domiciled in this State. In its nature such an analysis of the evidence is a comparison of one combination of facts with another, and the significance of some of the factors involved is as matter of law greater than that of others. " What was this man's general habit of life? That is always the great and leading inquiry in questions of domicil." (*Sherwood* v. *Judd*, 3 Bradf. 267, 276.) "A change of domicile may be made * * * for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention. * * * While acts speak louder than words, the words are to be heard for what they are worth." (*Matter of Newcomb*, 192 N. Y. 238, 251, 252.)

Mr. Trowbridge was born at New Haven, Connecticut, June 6, 1843. He was reared and educated there. In early manhood he became associated with a banking firm in the city of New York. That association continued until he retired from active business in 1902. In 1884 he acquired a residence property at 57 East Thirty-fourth street in the city of New York which remained in his ownership at his death. This was the principal Trowbridge family establishment, at least until 1890. Thereafter the family spent the summer each year at Noroton, Connecticut, until Mr. Trowbridge in 1904 purchased a substantial residence there which admittedly was his domicile in 1921 when it was razed by fire. It has been held below that Mr. Trowbridge then changed his domicile from Connecticut to the city of New York and

kept it there to his death.   This finding is the crux of the controversy.

In 1921 Mr. Trowbridge was seventy-eight years of age.   His active business life had ended years before. At once he planned to replace the Noroton family headquarters which fire had destroyed.   A new habitation on the same site was completed in 1924 at a cost of half a million dollars.   By this structure the man sought to express himself.   He embellished it with the family crest and coat of arms.   The findings are that he " took a personal pride in having his family circle about him at the house he had built.   *   *   *   He had engraved in the stone mantelpiece above the fireplace in the dining room the inscription ' *O noctes cenaeque deum quibus ipse meique ante larem proprium vescor* ' (' O nights and feasts of the gods which I and mine enjoy before our own hearthstone ').   *   *   *   This family home was the center of family reunions on numerous occasions.   *   *   *   He had built therein a large play room so that his grandchildren as well as his grandnephews and grandnieces, near neighbors of his   *   *   *   would have an appropriate place to play.   *   *   *   He was interested in his flowers, his garden and his trees.   *   *   *   He took pleasure in running his home, and was distinctly a home man.",

Mr. Trowbridge and his immediate family, his wife and an unmarried son, lived in the new mansion from its completion in 1924 to his death on May 30, 1931.   During that period the house in the city of New York was unused and boarded up.   Telephone service there was discontinued.   Furnishings and silver were removed to the Noroton household.   In the last six years of his life Mr. Trowbridge spent the night under that roof on all but twenty-one occasions.   In 1930 he declared in casual conversation with a friend and neighbor that his home was in Connecticut and he was going to stay there; that he had closed his town house and never expected to go back to it.   The learned referee says in his opinion: " From about November, 1924, decedent and his family

lived at the new house at Noroton exclusively." Such, in substance, is the case made by the State of Connecticut.

After his retirement from active business in 1902, Mr. Trowbridge had desk room in an office at 71 Broadway in the city of New York where he attended almost daily until his death. His investments were largely in bonds of this State and its municipalities. Tax problems persuaded him to have the advice of a lawyer during 1921. He was told " that it was mainly a matter of intention of the man himself, and that the first thing to do was to describe himself in all writings and instruments as a resident of the State of New York." Consistently thereafter that counsel was repeatedly followed. The numerous documents in which Mr. Trowbridge characterized himself as residing in the city of New York need not be listed. It is the admitted fact that he desired to have his " residence " in that city after 1921.

In 1921 and thereafter, except 1925 and 1930, he registered and voted in the city of New York as a resident of 57 East Thirty-fourth street, Manhattan. On October 15, 1921, he filed a verified statement with the Connecticut tax authorities as a non-resident of that State, a declaration of status never withdrawn. Later he requested the tax authorities of the city of New York to transfer his name to the resident tax roll for Manhattan, upon which he was entered accordingly from 1924 to 1930, inclusive, as residing at 57 East Thirty-fourth street. On October 15, 1929, he submitted to the same authority an affidavit asserting that his taxable personal property within this State did not exceed one thousand dollars in value and that his residence was at 57 East Thirty-fourth street. He also said to one of his sons that he was a resident of this State. His will so declares. In substance, such is the proof of the respondent State Tax Commission of this State.

General concepts or definitions of domicile need not now engage us. If at a given time a man exclusively

makes his home with his family in a complete domestic establishment, intending so to occupy it for the rest of his days, the place of that habitation is then his domicile, no matter what he may say to the contrary. (*Matter of Roberts*, 8 Paige, 519, 523, 524; *Peterson* v. *Chemical Bank*, 32 N. Y. 21; *Dupuy* v. *Wurtz*, 53 N. Y. 556, 566; *Matter of Harkness*, 183 App. Div. 396.) We have just that case here. Concededly, Mr. Trowbridge actually lived only in his Noroton house for years before his death. His purpose to keep his family settlement there as long as he lived is demonstrated by the accepted evidence. What is there to diminish the force of these dominant facts? Chiefly the declarations made to tax authorities and the periodic voting pilgrimages to the city of New York. These — and again the supporting evidence is undisputed — were all parts of an attempt to vindicate an opinion that a man may retain an abandoned home as a technical domicile in law after he has elsewhere established another abode in which he expects to live indefinitely. Doubtless that intention was entertained in good faith and from motives that are beyond criticism, but it is nonetheless irrelevant. (*Chaine* v. *Wilson*, 1 Bosw. 673.) (See *Attorney-General* v. *Yule and Mercantile Bank of India*, [1931] 145 L. T. 9, 17; *Dickinson* v. *Brookline*, 181 Mass. 195, as cited in *National City Bank* v. *Hotchkiss*, 231 U. S. 50, 56; Beale, 34 Harv. L. Rev. p. 52.) The additional fact that Mr. Trowbridge transacted his limited personal business in this State is unimportant in the circumstances. In *Peterson* v. *Chemical Bank* (*supra*) the question was whether one Cohen at his death had his domicile in the city of New York or in New Haven, Connecticut. In that case, as in this, property and business interests of the decedent were in this State. There it was the fact, as it is here, that the decedent in documents had described himself as of the city, county and State of New York. DENIO, Ch. J., said for this court: " The evidence was quite

conclusive that the domicile of Cohen at the time of his death, was at New Haven. The purchase of an expensive dwelling house for his residence, the measures taken to furnish it with servants, and to repair and supply it with furniture and fuel, and the intention to make it his permanent abode for the remainder of his life were shown by positive evidence which was wholly uncontradicted. Upon this evidence there was no question for the jury, and if a verdict had been returned involving a denial of its effect, it would have been at once set aside. If it be conceded that, prior to these acts, and this manifestation of intention, it was equivocal whether his residence was at New York or New Haven, it was no longer so, after he had provided himself with a residence in the latter city, with the absolute determination permanently to occupy it " (p. 40).

A question of domicile, like any other ultimate question, may be one of law in the sense that in a particular case the conclusion of the trier of the fact is not necessarily final. " If the facts are undisputed and admit of but one inference, the question is one of law." (*Wass* v. *Stephens*, 128 N. Y. 123, 127.) Here, as we have said, all the primary evidentiary facts are admitted. We think that, upon the findings made below, the only inference admissible in sound reason is that the domicile of Mr. Trowbridge at his death was at Noroton, Connecticut. It may be suggested, of course, that by this disposition of the controversy we have imputed unreasonableness to the courts below because we disagree with them. Such a pleasantry has been dismissed before this. (Thayer, Cases on Evidence [2d ed.], p. 163.)

The orders should be reversed and the proceeding remitted to the Surrogate's Court for further proceedings in accordance with this opinion, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur; FINCH, J., not sitting.

Ordered accordingly.