In the Matter of the Estate of EDMUND C. LYNCH, Deceased.

Surrogate's Court, New York County, March 29, 1939.

*Chadbourne, Hunt, Jaeckel & Brown* [*John M. Wood* of counsel], for the petitioners.

*Jerome M. Hirsch,* for the State Tax Commission.

*Joseph D. Allen,* special guardian.

FOLEY, S. The petition in the probate proceeding, in addition to offering the will for probate, prayed for a determination as to the domicile of the decedent and specifically whether he died a legal resident of the county and State of New York or a legal resident of the Bahama Islands in the British West Indies.

The will and codicil were admitted to probate by a decree and supplemental decree which reserved for determination the question of such residence by further supplemental decree. The citation duly raised the question of domicile. All persons interested in the estate were brought in including the State Tax Commission of the State of New York.

The evidence upon the trial developed that Mr. Lynch was born in the State of Maryland in the year 1885. He came to New York city in 1916. He engaged in the investment banking business with his principal office in this county. He accumulated a large fortune in that business. It is undisputed that from 1916 to and including 1936 his legal residence was in this State. For the tax years 1919 to 1936, inclusive, he paid his income tax to the State of New York as a resident of this State. In the year 1923 he purchased a proprietary interest in an apartment at 570 Park

avenue in this county. In 1926 he acquired a larger apartment in the same building and maintained it as his principal place of abode until the time of his death. Its cost with improvements aggregated $125,000. He was married in 1924. His family consisted of his wife and three children. In 1936 he acquired a large country home at Locust Valley, Long Island. He acquired two other country places on Long Island and spent part of the summer with his family in one of them. According to the sworn statement of his wife the couple considered their residence at 570 Park avenue as their home. The decedent sailed for Europe from New York city on a vacation trip on May 4, 1938, and died eight days later, on May twelfth, in London.

Upon the array of facts consisting of his unequivocal statements and acts over a period of twenty years a determination of residence in New York county would have been simple. The complications arose out of three written declarations made by him in 1937 which, it is claimed, evidence an intent on his part to change his residence from New York county to Nassau, Bahama Islands, British West Indies. On October 8, 1937, approximately seven months before his death, he filed a formal declaration under oath that in the month of March, 1937, while on a visit to the city of Nassau in those islands, he had decided " to make the colony of the Bahamas my permanent future home." He further stated that he had formed a fixed and settled purpose of abandoning his domicile of origin in the United States and of making the Bahamas his sole permanent future home. During the year 1937 he purchased certain real estate and built an extensive home in Nassau. In his application for a passport in 1937, made to the State Department, he stated that he was not domiciled in the United States and that his permanent residence was at Nassau. In his income tax return to the State of New York for the tax year 1937 he described himself as a non-resident of this State.

His statements of intention contained in these documents are, however, contradicted by concurrent and subsequent statements contained in at least one other formal document made in September or October, 1937, wherein he stated that his residence was 570 Park avenue in the county and State of New York. Moreover, it is clear that his intention to abandon his domicile in New York was prospective only and without the necessary legal element of a union of conduct and intent. (*Matter of Newcomb*, 192 N. Y. 238; *Dupuy* v. *Wurtz*, 53 id. 556.) The material rules applicable to a change of residence as laid down by these authorities are (a) that the domicile of origin or selection, if established, is presumed to continue until a new one is acquired; (b) that the burden of proof

rests upon the party asserting the change, and (c) that to sustain the burden *animus* and *factum* must be combined and that intent must be supported by actual conduct.

This essential combination is entirely lacking in the proofs. He continued to retain his place of business in New York city. His personal and business files were kept there. His securities were maintained in safe deposit boxes here until the date of his death. His principal accounts were maintained in a bank in this city. Only a small checking account was employed in Nassau in the West Indies. He was a resident member of many clubs in this city and paid dues as a resident member of those clubs within a few weeks before sailing for Europe on May 4, 1938. He did not abandon his principal home in New York city. On his return from Nassau and immediately prior to his trip to Europe he lived at his Park avenue residence in this county. There most of his personal effects remained to the time of his death. The valuable furnishings at his New York city apartment and his country places on Long Island were likewise retained there. No articles of any value had been sent to his residence at Nassau. Undoubtedly, his plan to change his domicile, although not effectuated in fact, was motivated by a desire to avoid the imposition of taxes, either upon income or otherwise.

It appears from the evidence that he had not visited Nassau previous to 1937 except in one or two isolated instances. Apparently his original intent when he built the house there in 1937 was to maintain it for his winter vacations. His children continued to be educated at schools in New York. But the true nature of his intent not to abandon his New York domicile is found in his own declarations as described by his uncle, who accompanied him on his last trip abroad just before his death. His uncle testified that the testator had spoken of the possibility of his intention of changing his residence to Nassau. The testator declared, however, that it was not decisive, that it gave him a period of five years to acquire citizenship in a foreign country and " I have got that long to make up my mind finally what I will do." During the few days before his death he stated that he had not decided definitely to change his domicile. He had often mentioned that New York city was his home.

Intent has an important and essential bearing upon domicile. " It is always a distinct and material fact to be established." (*Matter of Newcomb*, 192 N. Y. 238, 251.) " A person cannot change his domicile by removal to a new dwelling place without an intention to make the new dwelling place his home." (Restatement of the Law of Conflict of Laws, p. 36.)

The intent " to change the domicile especially where such change is to a foreign country must be established." (*Matter of James*, 221 N. Y. 242, 256.)

The weight of the evidence in the pending proceeding negatives a *bona fide* and actual intent on the part of Mr. Lynch to establish a new domicile. What he said in his British West Indian declaration of October 8, 1937, was prospective, conditional and lacking in finality. His contemporaneous and subsequent acts and declarations nullify the definiteness and fixity of purpose.

The surrogate accordingly finds that the testator died a resident of this State and county. (*Matter of Newcomb, supra; de Meli* v. *de Meli*, 120 N. Y. 485; *Dupuy* v. *Wurtz, supra; Matter of Lydig*, 191 App. Div. 117; *Matter of Harkness*, 183 id. 396; *United States Trust Co.* v. *Hart*, 150 id. 413; modfd., 208 N. Y. 617.)

Submit supplemental decree on notice accordingly.