In the Matter of the Estate of JOHN JACOB HOFF, Deceased.

Surrogate's Court, New York County, May 2, 1942.

*Coudert Brothers*, for the petitioners.

*Jerome M. Hirsch*, for the State Tax Commission, respondent.

FOLEY, S. The executors moved to exempt the estate from tax upon the ground that the testator at his death was not a resident of nor domiciled in the State of New York. He left an estate of approximately $5,000,000.

Pursuant to the written stipulation of the parties the matter was sent to the State Tax Appraiser " to take evidence on the question of the domicile of the decedent and refer the record back to the surrogate for his judicial determination of that question." (*Matter of Hoff*, N. Y. L. J. Nov. 16, 1940, p. 1582.) The record was completed and is now submitted for determination. It is voluminous and consists of testimony of witnesses, affidavits and very many documents. Upon it the surrogate holds that the decedent was not a resident of nor domiciled in the State of New York at the time of his death. The application of the executors for the exemption of the estate from our estate tax is granted.

The facts in the record are numerous and extended. With meticulous detail the executors in their proofs have covered the

manner and places of living of the testator and his declarations as to residence during the eighty years of his existence. This evidence may be summarized by a division into salient periods.

(1) He was born in the State of New Jersey. He left that State in infancy, with his parents. His domicile of origin there was definitely abandoned and never re-established.

(2) A subsequent period of years during which he resided in Germany, France and in the State of Virginia.

(3) A period from about the year 1887, in which he lived almost continuously in France with business connections in the petroleum industry there. This period continued until his marriage in 1900.

(4) A period from such marriage, which took place at Detroit, Mich., until about March, 1939. During this time he maintained his principal places of abode in France. He made occasional visits to Michigan. His business interests in France continued until his retirement in 1933. There recur many convincing written declarations, some of them under oath, of his intention to retain his status as a citizen of the United States. In this period his declarations in applications for passports set forth (with exceptions only in 1915) that his domicile was in the United States and that his legal or permanent residence was at different locations in Michgan. They support his intention to continue his individual domicile in that State.

(5) A final period of the few months before his death in which there is an attempted change of his domicile from Michigan to New York city. He died in France on December 3, 1939. The statements of his purpose are set forth in oral declarations and in two writings, one in his will executed in Paris on April 5, 1939, and the second in a formal document written from Paris on April 12, 1939, to a financial institution in New York city. These statements were not accompanied or effectuated subsequently by the acquisition of any actual home, residence or place of habitation in New York. This period was principally spent in France. One visit to the United States intervened. His destination was Detroit, Mich. On his outward and on his return trip he spent a few days at a hotel in New York city.

Three possible contentions as to domicile are presented. The first alternative would rest upon the contention that Mr. Hoff was domiciled in France.

The second alternative would rest upon the claim of the State of Michigan under his repeated statements that he was a legal resident of that State for a period of thirty-nine years. Michigan has not intervened in this proceeding under the procedure adopted by Connecticut in *Matter of Trowbridge* (266 N. Y. 283) and *Matter*

*of Benjamin* (176 Misc. 518; affd., 263 App. Div. 981) or by the Commonwealth of Massachusetts in *Matter of Lydig* (191 App. Div. 117). Michigan, however, has initiated steps to subject the passing of the estate of Mr. Hoff to an inheritance tax under its laws upon the theory that he was domiciled there.

The third alternative, domicile in the State of New York, is asserted here by our State Tax Commission.

In the consideration of these questions, elimination can be readily made of any theory that France was the place of domicile at the date of the testator's death. The factual proof is overwhelming that Mr. Hoff never intended to surrender his domicile in the United States. His sworn representations in his frequent passport applications over a long period of years and until within a few months of his death emphasize this conclusion.

Whatever may be the modern trend of concepts of domicile whereby greater consideration is given to the permanency of a home as between two habitations within the same State (*Matter of Johnson,* 259 App. Div. 290; affd., 284 N. Y. 733; *Matter of Benjamin, supra*), or between dwelling places in two or more States (*Texas* v. *Florida,* 306 U. S. 398; *Matter of Trowbridge, supra*), there still continues a different rule as to a change of domicile from one country to another country.

The question still remains one of the special circumstances of each case. The former rule in England that British nationality alone forbade the acquisition of a new domicile elsewhere has been changed by the courts of that country. It has never been given any recognition in the courts of our State and of this country. (1 Beale on Conflict of Laws, pp. 165, 166; *Casdagli* v. *Casdagli,* [1919] A. C. 145.) In a factual situation when a person leaves his own country to live or carry on business in another, as stated by Professor Beale, the " ties of country, of manners and of language might be so strong that one could with difficulty break them altogether and there must therefore be a strong presumption against the change of domicil in such a case." (1 Beale on Conflict of Laws, p. 165.)

In our own State the decisions have consistently followed the rule stated in *Dupuy* v. *Wurtz* (53 N. Y. 556, 561), that " To effect a change of domicil for the purpose of succession there must be not only a change of residence, but an intention to abandon the former domicil, and acquire another as the sole domicil. * * * Length of residence will not alone effect the change. Intention alone will not do it, but the two taken together do constitute a change of domicil."

In its relation to conflicting claims of domicile between two countries, it is stated in the leading case of *Matter of Newcomb* (192 N. Y. 238, 250): " Less evidence is required to establish a change of domicile from one State to another than from one nation to another." Differently stated by Judge CHASE in *Matter of James* (221 N. Y. 242, 256), the domicile of origin (or by the same tests, the domicile of choice) " is presumed to continue until a new one is acquired and the intent to change the domicile especially where such change is to a foreign country must be established."

In the present case the evidence preponderates in support of a retention of a domicile in the United States as against the acquisition of a new one in France. The duration of his residence abroad and the extensive character of his dwelling places there are of little consequence when weighed with the declarations of a continued adherence to a legal residence in America. Two decisions in the courts of our State have dealt with periods of continued absence from this country and residence for many years in France. ( *United States Trust Co.* v. *Hart*, 150 App. Div. 413; affd., with modification, upon other grounds, 208 N. Y. 617; *Matter of Blumenthal*, 101 Misc. 83; affd., 186 App. Div. 944.)

In the *Hart* case the domicile of choice was in New York. The decedent resided in Paris for a period of thirty-eight years until the date of his death. There, as here, his application for a passport stated that he was domiciled in the United States. There were other supporting declarations of a purpose which showed that in every formal act of his life where it became necessary for him to state his domicile, he invariably claimed it in the United States and not France. His acts were held to be inconsistent with an intention on his part to change his domicile from New York.

In *Matter of Blumenthal* (*supra*) the decedent spent many years in Europe. He acquired a palatial residence in Paris. In his formal declarations he invariably claimed the State of New York, and not France, as his domicile. In the absence of proof of an absolute and fixed intention to abandon his legal residence in New York and to acquire one abroad, it was held that he was domiciled in this State.

With this elimination of France as the domicile of Mr. Hoff, the question for decision, therefore, narrows down to a determination as between Michigan and New York. Michigan was the indisputable domicile of choice of Mr. Hoff from the year 1900 to early in 1939. Upon the array of proof consisting of his unequivocal statements and acts over a period of almost forty years, a determination of residence in Michigan would have been simple.

The only complications arise out of his oral declarations and two written declarations made by him in 1939 which it is claimed evidence an intent on his part to change his legal residence to New York city. His wife had died on December 18, 1938. At several times· prior to April 5, 1939, he had declared to his legal adviser that he was domiciled in Michigan. In the early months of 1939 he discussed with his counsel the preparation of a new will. In connection with it consideration of the selection of a new domicile was had. It was through the fact that his wife was born in Michigan, and through association of the residence of her family and their business interests there, that he had established and continued his own affiliation with it. The recent death of his wife apparently terminated most of the sentiment that bound him to Michigan. He talked to his attorney of his desire to acquire a New York domicile in the near future and to obtain a place of residence within the State of New York where he would eventually live. He spoke of the complications which had arisen in the settlement of his wife's estate by reason of double administration in Michigan and New York. No other motives were disclosed than to expedite the administration of his own estate and the question of estate taxation. His attorney was under the mistaken impression that Mr. Hoff's domicile of origin was in New York and that by the acquisition of a dwelling place in New York with the intention of permanent residence there, Mr. Hoff could re-establish a domicile in our State. Actually, as set forth above, his domicile of origin was New Jersey.

On April 5, 1939, in his last will executed in Paris, he described himself as " of the city of New York, in the State of New York, U. S. A." A week later he signed a letter which he sent to the United States Trust Company in New York city in which he stated: " I hereby declare that I am a citizen of the United States and that my domicile and legal residence is in New-York-City, New-York." In the following month he sailed for New York with the intention of accompanying his wife's remains to their ultimate burial place in Michigan. On his way there he stopped, only over night, in a hotel in New York and on his return from Michigan through New York city ten days later he spent approximately two weeks at the same hotel there and left immediately thereafter for France. He never acquired any prospective home in New York by purchase or rental and the evidence does not disclose that he even made inquiry as to the purchase or lease of any habitation here.

The general rule applicable here was stated by Mr. Justice STONE: " Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile.

\* \* \* While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there." (*Texas* v. *Florida, supra,* 424, 425, citing *Matter of Newcomb, supra,* and *Matter of Trowbridge, supra,* 292.)

An intent to acquire a new domicile is futile where it is not consummated.

" The intention required for the acquisition of a domicil of choice is an intention to make a home in fact, and not an intention to acquire a domicil." (Restatement, Conflict of Laws, § 19.) " For the acquisition of a domicil of choice the intention to make a home must be an intention to make a home at the moment, not to make a home in the future." (Restatement, Conflict of Laws, § 20.) The comment to section 19 is pertinent. " A person sometimes desires to have his domicil in a certain place, in order to get the benefit of one or more of the legal consequences of having a domicil there, but does not wish to change his home to that place; this desire to have a domicil in a certain place has no effect in fixing his domicil there."

Intent must be supported by actual conduct. " The mere desire to have a domicil in a certain place with the intention that it shall be so is not enough, where, as here, there is no actual change of abode and apparently no intention of performing any of the acts which are necessary to constitute such a change. \* \* \* The purpose to change is not enough, unless carried into execution." (*Babcock* v. *Slater,* 212 Mass. 434; 99 N. E. 173.)

The declarations made by Mr. Hoff of his intention to establish a residence in New York were prospective and lacking in finality. (*Matter of Lynch,* 170 Misc. 966.) He told his lawyer that he would acquire a place of abode here where he would eventually live. His failure to effectuate this plan by the subsequent acquisition of a home here nullifies the expression of a purpose.

In this connection in my decision in *Matter of Leidenger* (173 Misc. 808) I wrote: " The facts disclosed here do not present the situation where a person with two residences assumes to fix one as his domicile in law. It is rather an attempt to fix domicile in a place where a person had no residence at all."

The surrogate finds upon the evidence that the burden cast upon New York to establish a change of domicile from Michigan has not been sustained. The testator was not domiciled in nor a resident of the county and State of New York at the time of his death.

Submit order on notice accordingly granting the application to exempt the estate from the estate tax.