## MOULTRIE and others, *appellants, vs.* HUNT, *respondent.*

In 1849, H. being a resident of, and domiciled at, Charleston, S. C., made his will in the presence of three witnesses, executed in the form required by the laws of South Carolina, but not according to our laws, inasmuch as he omitted to declare it to the witnesses to be his will.     In the year 1854 he removed to the city of New York, and died there.     *Held* that the will was valid as a will of personal estate, and was properly admitted to probate as such.

As respects wills of personal estate, the place of execution is to give the law, as to the formality of execution.

APPEAL from a decree of the surrogate of New York, admitting to probate the last will and testament of Benjamin F. Hunt, as a will of personal estate.

*M. G. Harrington,* for the appellants.

*David P. Hall,* for the respondent.

*By the Court,* MITCHELL, P. J.    Benjamin F. Hunt in 1849 was a resident of, and domiciled in, Charleston, S. C.    He made his will in the presence of three witnesses, executed in the form required by the laws of South Carolina, but not according to our laws, as he omitted to declare it to the witnesses to be his will.    He afterwards, in the year 1854, removed to the city of New York, and died here.    The surrogate of this county admitted the will to probate as a will of personal estate, but not as a will of real estate.    The appellants appeal from the first part of that decision.    The principle held by the surrogate is that the validity of a will, so far as regards the capacity of the testator, is to be determined by the domicil of the testator, when he dies, and also as to some other matters ; but as to the forms of execution, by the law of the place of execution, *lex loci regit actum.*    In this distinction he is sustained by the authorities under the civil law, so far as we have been able to examine them.    He is opposed by Judge Story, who, it is alleged, relied on authorities as to the capacity of the testator, as if they related to the formality of the instrument.    He also seems to consider the English authorities as adopting a different rule.    In this view of the law, Judge Story and the English authorities would be one way, and the authorities under the civil law the other.    There was a conflict which it was expedient the legislature should settle, and any language of theirs, which, although somewhat ambiguous, may fairly be deemed as covering the question, should be considered controlling, by our courts.    The *opinion* of the chancellor was that a will is valid as to personal estate, whether made in its forms according to the law of the domicil of the testator or the law of the place of its execution ; and so he understood our revised statutes.    (*See* 8 *Paige,* 524, 5, 6, *in matter of C. Roberts' will.*)    The revised statutes, as amended in 1830, (2 *R. S. 2d*

*ed. p.* 12, § 63, *&c.*) authorized the proof of wills to be made under a commission to issue out of chancery, when they were made *according to our laws,* and the witnesses resided out of this state. This applied as well to real as to personal estate. (§ 67.) They also authorized "wills of *personal* estate duly executed by *persons residing* out of this state, according to the laws of the state or country, in which *the same were made,*" to be proved in like manner. And when "a will so executed should have been duly admitted to probate in such state or country," they allowed letters testamentary to be granted on it here, on the production of the exemplification of the will. (§ 60.) They also declared that no will of *personal* estate *made out of this state,* by a person not being a citizen of this state, shall be admitted to probate, unless it shall have been executed according to the laws of the state or country in which *it was made.* (§ 69.) The laws of 1840, *ch.* 384, § 2, also allow "a will of *personal* estate duly executed in this state, by a person not a resident of this state," when first proved in a foreign state, to be proved here on the presentation of an exemplification. The provision first quoted, applied as well to *real* as to personal estate, and it therefore did not allow a probate unless the will were executed according to our laws. The next provision applied only to *personal* estate, and therefore gave effect to such wills *not made according to our statute,* if duly executed by persons *residing out* of this state, according to the laws of the state or country in which the same were made; but declared that no such will should be admitted to probate if "made out of this state by a person not being a citizen of this state," unless executed according to the laws of the state or country in which it was *made.*

The statute seems by implication to exclude from its benefits a citizen of this state temporarily absent from the state, perhaps under the notion that he must know what the law of his own state is—and comply with it—or he cannot avail himself of the disposing power which our law gives him. It clearly applies to all who are residing out of this state. The

appellant says; this means residing out of the state at the time of their death. But this is contrary to the language used. No time of residence is mentioned in the statute, except that which is to be inferred from the use of the participle residing, in connection with the execution of the will. In the phrase, " wills of personal estate executed by persons residing out of the state," if the question is asked " when residing ?" no answer can be derived from the sentence alone, but one— the time previously referred to—residing at the time when it was executed. Then it is to be admitted to probate if executed according to the laws of the place where it was *made;* not according to the laws of the domicil of death. So section 69 refers also to the time of execution, when it says " no will of personal estate made out of this state by a person not being a citizen of this state"—that is, not being a citizen when it is made—and it excludes the law of his domicil as to the *form* of execution, by declaring that it " shall not be admitted to probate unless it be executed according to the laws of the state or country in which it is *made.*"

The act of 1840 is also on the principle that the place of execution is to give the law as to the formality of execution, for it allows a will of a non-resident duly executed in this state, and proved abroad, to be admitted to probate here on an exemplification. The test is as to execution—" duly executed in this state." That implies that it was executed here according to our laws. The result of these statutory provisions, so far as they concern personal estate, is, that in each of them the test of the due execution of a will as to its forms, when it is offered for probate in our state, is conformity to our laws, or to the laws of the state where it was executed, whether executed here or in a foreign state. And it is fairly to be inferred that the legislature, aware of the diversity of rules prevailing in different countries, chose to adopt the rule most common in countries where the civil law prevails.

By our law, this will was good as to personal estate, when it was made in 1849, the testator being then a resident of

Charleston.   It would have been unquestionably valid here, if he had continued to reside there.   There is no law of ours declaring that a change of domicil shall make void or revoke a will previously valid ; and there is no reason why such a change should have that effect.   Especially is this so in our country, where our citizens change from one state to another more readily than in any other part of the world ; still feeling that with all the changes they have but one country—and generally similar laws—and not realizing that in some respects they pass under a new system.   But few could conceive that whenever they change their domicil, they must consult the laws of their new home to know if a will perfectly valid when they left their former home, was in conformity with the new laws to which they had submitted.

The decree of the surrogate, admitting the will to probate as a will of personal estate, should be affirmed with costs.

[NEW YORK GENERAL TERM, December 28, 1857.   *Mitchell, Davies* and *Clerke,* Justices.]