# In the Matter of the Will of OOLAH DUKE, Deceased.

Surrogate's Court, New York County, April 21, 1943.

*White & Case* for William D. Duke, petitioner.

*Choate, Mitchell & Ely* for American Security and Trust Company, as Executor of Elmer S. Burruss, deceased, respondent.

*Nathaniel L. Goldstein, Attorney-General (Corning G. McKennee* of counsel), for State of New York.

DELEHANTY, S. At the time deceased executed her will she was domiciled in Virginia. She continued to be so domiciled at the time she executed her codicil. Thereafter she removed to this State wherein she was domiciled when she died in 1940.

The larger part of her estate is given to charity. Some comparatively small gifts are made to individuals. Some of the named beneficiaries died without issue and as to them the intended legacy lapsed both under New York and Virginia law. Some of the individuals mentioned died before deceased leaving issue. As to such issue the question is presented whether a proper construction of the will of deceased entitles them to the legacies intended for their parents respectively. None of these intended legatees was a descendant of deceased. None of them was a brother or sister of deceased. None of the gifts to these persons can be saved by application of section 29 of Decedent Estate Law of this State. The primary question presented is whether or not the gifts may be held effective because of section 24 of Decedent Estate Law despite the fact that deceased died domiciled in this State.

At the time her will and codicil were drawn the statute law of Virginia provided and now provides as follows: "If a devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by the will." (Virginia Code, § 5238.)

The quoted text is much broader in its operative effect than our comparable statute (Decedent Estate Law, § 29) which saves only for issue of descendants, brothers or sisters, gifts to one of that class who predeceases a testator. But in the fact that the protective area of our statute is narrow there is no indication that there is a public policy against the preservation of gifts to legatees who so predecease a testator. Whatever statutory indication of public policy we have is quite to the contrary. Sections 23, 24 and 25 of Decedent Estate Law declare a State policy to recognize and to enforce broadly in our courts the intentions of testators whose wills fall within the protection of these sections though such wills are not executed in conformity with the law of this State. Since these three sections and in particular section 24 of Decedent Estate Law must be relied upon for the rule of decision in the issue before the court, it has been deemed appropriate to review somewhat at length the origin of these sections. This is the more necessary because neither counsel nor the court has found any substantial body of case law dealing with section 24 of Decedent Estate Law. Such case law as has been found has not been helpful in any marked degree.

These three sections have their immediate roots in section 2611 of the Code of Civil Procedure as that section existed before the Consolidated Laws were enacted in 1909. When the Decedent Estate Law was enacted the consolidators evidently thought it wise to separate the three ideas theretofore contained in the single section of the Code of Civil Procedure and to put them into separate sections of Decedent Estate Law. That the three sections are still integral is shown by the reference in section 25 of Decedent Estate Law to the applicable area of the two prior sections 23 and 24.

When the text of section 2611 of the Code of Civil Procedure is traced back to its origin, we find that the ideas expressed in it were contained in sections 2611, 2612 and 2613 of the original Code of Civil Procedure enacted in 1880; and that these original sections of the Code came into being through the Code Commissioners' revision of chapter 118 of the Laws of 1876 which was passed on April 11, 1876. That date of passage is the date still mentioned in section 25 of Decedent Estate Law and always theretofore used in the Code of Civil Procedure. It is informative to note in chapter 118 of the Laws of 1876 the first beginnings of the broadened concepts which are now part of our law as sections 23, 24 and 25 of Decedent Estate Law.

The cited statute of 1876 dealt only with the effectiveness of testaments relating to personal estates. The first section of the Act made a testamentary instrument executed outside the State of New York but within the United States or Canada or the Kingdom of Great Britain and Ireland " well executed for the purpose of being admitted to probate in the State of New York " provided it conformed to the requirements of law " of the place where the same was made or  *  *  *  the place where [the testator] was domiciled when the will was made ". That first section is substantially the same as our section 23 of Decedent Estate Law except that the latter now applies to wills affecting real as well as personal property and except that now the rule of the latter section is not limited to testaments executed in continental United States, Canada and the Kingdom of Great Britain and Ireland.

The second section of the cited statute of 1876 provided that this State would admit to probate every testament made within this State in accordance with the forms required by our laws, no matter if the testator were domiciled elsewhere. Again this provision was made effectual only in respect of personalty. This section of the cited statute said that the will would be probated " whatever may be the domicile of the person making

the same at the time of making the same, or at the time of his or her death ".

The third subdivision of the cited statute of 1876 is the precursor of section 24 of Decedent Estate Law and, because of differences in text between it and the present statute, is here quoted in full. It says: " No will or other testamentary instrument shall be held to have become invalid, nor shall the construction thereof be altered by reason of any subsequent change of domicile of the person making the same." When the substance of chapter 118 of the Laws of 1876 was carried into the Code of Civil Procedure in 1880 (original Code §§ 2611–2613), the revisers evidently undertook to consolidate the ideas contained in sections 2 and 3 of the statute of 1876. Instead of adhering precisely to the text of that statute the revisers said (original Code of Civil Procedure § 2612): " The right to have a will admitted to probate, the validity of the execution thereof, or the validity or construction of any provision contained therein, is not affected by a change of the testator's residence made since the execution of the will." While the statute of 1876 consistently referred to " domicile ", the revisers as consistently used the word " residence ". As will be seen later the revisers intended no change in the sense of the statute.

That these changes in text were not intended to effect any change in meaning becomes obvious when the legislative history of the new Code is examined. Among the persons named Commissioners to Revise the Statutes was Montgomery H. Throop who issued to the profession an annotated Code of Civil Procedure in the year 1881. In this publication Mr. Throop gave the history of the legislative steps which eventually resulted in the completed Code of Civil Procedure. He said in effect that for the enlightenment of the legal profession his publication specified under each section " from what portion of the former statutes the section in question was taken ". In Mr. Throop's text he appended notes to sections 2611, 2612 and 2613 of the new Code. Under 2611 his note says: " (L. 1876, ch. 118, §§ 1 and 2, amended, so as to allow a will of personal property to be proved, which is executed according to the laws of the testator's residence, wherever it may have been executed. The act of 1876 confined that provision to wills executed in the State, or in one of the countries enumerated in the act.) " Under 2612 the note says: " (Id., § 3.) " Under 2613 the note says: " (Id., §§ 4 and 5.) " That Mr. Throop properly ascribed the source of the new sections 2611–2613 of the Code to the statute of 1876 is evident from the report of the special committee of the Sen-

ate which was charged by the Senate under a resolution passed May 15, 1878, with the duty to sit during the recess and examine the bill submitted by the Commissioners to Revise the Statutes and to report to the next session. This special committee made a report in which the text of sections 2611-2613 proposed by the Commissioners was left untouched. The committee also appended a schedule to its report headed: " Notes to the bill entitled ' An act Supplemental to the Code of Civil Procedure ' submitted by the special committee of the Senate upon the Revision of the Statutes." In these notes under the section number 2611 the Senate committee inserted the note " L. 1876, ch. 118, §§ 1 and 2." Under the Code section number 2612 the Senate committee appended the note " Id., § 3." Under the Code section number 2613 the Senate committee inserted the note " Id., §§ 4 and 5." There is no indication in these notes of any intention to change the intrinsic meaning of the text of the 1876 Act.

That the Act of 1876 had its origin in a general dissatisfaction of the legal profession and the public with some rules of law laid down in cases referred to hereafter is shown by an interim Revision of the Statutes, Commissioners' First Draft, which was printed in 1875 and circulated for criticism by the members of the bar and by interested members of the general public. In this 1875 report of the Commissioners there is included a proposed section — section 1691 — which in subdivision 2 was intended to authorize an action to establish a will properly executed under the laws of the place of domicile of the testator or of the place where the instrument was executed. In the Commissioners' notes to this proposed section, reference is made to the reversal by the Court of Appeals (23 N. Y. 394) of the case of *Moultrie* v. *Hunt* (26 Barb. 252). Under a later article dealing expressly with foreign wills and the issuance of ancillary letters, there is a general headnote by the Commissioners preceding new sections 2474-2483 which among other things said (Part III, p. 1241): " Our statutes also confer upon the court of chancery, the power to take proof, in the first place, of a non-resident's will, by commission. These enactments have been adapted by us to the existing organization of our courts, and revised in § 1691, subd. 2, and §§ 1692-1695, ante, with amendments, extending their provisions to cases where the testator was a non-resident, when a will of personal property was executed; and where such a will is valid under the laws of the State, wherein the testator resided at the time of its execution. These amendments will enable a will, thus

executed, to be established, although the testator had changed his residence since its execution. The change seems to be in accordance with sound policy; for few persons know the rule that a change of domicil, continued till death, will avoid a previous will, if the law of the new domicil varies from that of the old, with respect to the formalities required in its execution. Indeed, until the decision of the court of appeals in *Moultrie* v. *Hunt,* 23 N. Y., 394, the ablest lawyers of the State differed upon the question. See S. C., dissenting opinion of DAVIES, J., and *Ex parte McCormick,* 3 Bradf., 169. On the other hand, a person sojourning abroad, and desiring to make a will, may not have the means of information respecting the laws of his domicil.''

*Moultrie* v. *Hunt* (*supra*) was decided in 1861. In that case the Court of Appeals divided four to three on the question whether a will of a citizen of South Carolina executed properly according to the laws of that State must fail because the testator moved into this State and was domiciled here when he died. The case held that his will failed in this State because of defect in a formality of execution under New York law and that he died intestate as to his personalty. That case had the natural consequence of making of prime importance the question of domicile and we find that in 1873 the Court of Appeals dealt with the subject in *Dupuy* v. *Wurtz* (53 N. Y. 556). There the controversy was whether the testatrix was domiciled in France or in New York. Her will, executed in France, was saved only by a holding that her domicile was in this State. In *Ames* v. *Duryea* (6 Lans. 155, affd. [1874] 61 N. Y. 609) another will was saved by a like holding of domicile in this State. These and like controversies apparently inspired the Legislature to declare in the Act of 1876 that '' any subsequent change of domicile '' would not invalidate a will or alter its construction if it were properly executed at the domicile of the testator at the time or if it conformed to our laws, no matter where executed.

This history of section 24 of our Decedent Estate Law shows that in its origin it was intended to be a remedial statute. It must therefore be given a liberal construction. It is natural that most of the litigations that have arisen in respect of it have concerned the mode of execution of the will in controversy rather than the tenor of the will. The statute however deals with construction as well as with validity and with the right to probate. The original text of 1876 used the phrase: '' nor shall the construction thereof be altered ''. The Code of Civil

Procedure and the Decedent Estate Law say " the validity or construction of any provision contained therein, is not affected ". The intent of these texts is to require the courts of this State to save the testamentary wishes and plans of a deceased if that is possible. The text not only makes applicable to the *factum* of the will the provisions of the State in which it was executed, but it also makes applicable any pertinent law of the State of execution which affects construction.

It is settled law that a testator is deemed to draw his will against the background of the law of his domicile if he draws his will there. Beale states the rule thus: " One speaks, presumably, the language of his home, and the usage of his domicil is the principal element of interpretation; though of course not the only one. The courts, not distinguishing too meticulously between usage and law, lay down the rule that, nothing calling for a contrary view, language in a will is to be interpreted according to the domicil of the testator. * * * The domicil the usage of which fixes interpretation is the domicil at the time the will was executed, not that at the time of death, if there has been a change." (2 Beale on Conflict of Laws, § 308.1, p. 1038.)

Section 308 of the Restatement, Conflict of Laws, is in accord. It says: " Interpretation of Will of Movables. The meaning of words used in a will of movables, in the absence of controlling circumstances to the contrary, is determined in accordance with the usage at the domicil of the testator at the time of making the will." Again, Davids in his New York Law of Wills, volume 1, at page 741 says: " As a matter of fact, the meaning of the language of the instrument is to be discovered by a reference to the law which the decedent had in mind, and with which he was familiar, at the time of the execution thereof. This law ordinarily will be the law of the decedent's domicile * * *." Again at page 744, Davids says: " If as above set forth the interpretation of a will of personalty is governed by the law which the decedent had in mind at the time of execution — this law being established ordinarily by his domicile — it follows that a change of domicile subsequently to the execution of the instrument will have no effect on the rule of interpretation. Section 24 of the Decedent Estate Law expressly declares that the construction of any provision contained in a will is not affected by a change of the testator's residence made since the execution of the instrument."

There is no question here about the validity of the gifts but rather of the purpose and intention of the testator respecting

the gifts if her nominated beneficiaries predeceased her. It must be held under the authorities cited that she intended that the legacies to named individuals should not lapse if they could be saved under the Virginia law against the background of which she drew her will. Accordingly, the court holds that the gifts under article 8th of the will and under article second of the second codicil to persons who predeceased deceased leaving issue surviving her are payable respectively to such issue or (if they be now dead) to their representatives.

The petitioner requests instructions as to the payment of a legacy of $400 under article 14th of the will. The will names as legatee the Society for the Prevention of Cruelty to Children located in the city of Richmond, Virginia. The proof satisfies the court that this organization has abandoned its corporate powers and is no longer capable of taking the gift. The parties are in agreement that Children's Home Society of Virginia is a charitable organization operating in the same locality and furnishing the same sort of charitable aid to children. The parties are in agreement that the court should exercise its powers under the *cy pres* doctrine and direct payment to such organization. The decree may so provide.

Submit, on notice, decree construing the will and settling the account accordingly.