In the Matter of the Probate of the Will of ANGEL G. TRAVERSI, Deceased.

Surrogate's Court, New York County, June 29, 1946.

*Robert Moers* for Salvatore Traversi, petitioner.

*William J. Calise* for Grace I. Traversi and others, respondents.

*James L. Duncanson,* attorney designated by Alien Property Custodian for Joseph Traversi and others, persons within designated enemy territory, respondents.

*Carson De W. Baker,* special guardian for Leana Traversi, infant, respondent.

*Robert W. Cauldwell* for Trustees of the Masonic Hall and Asylum Fund, respondent.

DELEHANTY, S. One of the children of deceased petitions for denial of probate of a testamentary instrument concededly exe-

cuted by deceased. The petition asserts that the instrument was procured by undue influence and further, that it was revoked as to all its dispositive provisions. By appropriate answer to the petition certain legatees named in the instrument seek its probate. The parties requested trial first of the issue of revocation and the court agreed to rule upon this separate issue.

Deceased executed the paper on January 25, 1930, while domiciled in Brooklyn, New York. He became domiciled in the State of Virginia in the year 1934 and continued to live there until November, 1942. He then moved to New Jersey and later sojourned in New York — apparently retaining his Virginia domicile for at least a few months after his physical departure from that State. When he died on February 27, 1945, he had been domiciled in the county and State of New York for about two years.

After his death the disputed instrument was found among his effects. Inspection of the instrument discloses that paragraphs fourth to eleventh inclusive are obliterated by the lines drawn through each separate line of typewritten matter in the paragraph and crisscrossed over each of such paragraphs. Such inspection shows that in the margin opposite such obliterated paragraph there is a notation in the writing of deceased saying " Cancelled A. G. T."; and that opposite one of such paragraphs appears the word " never " in deceased's writing. The first, second, third, twelfth, thirteenth, fourteenth and fifteenth paragraphs are left wholly untouched by ink marks or marginal notations. These paragraphs respectively revoke all prior wills, direct the payment of debts, provide for estate taxes, grant powers and discretion to the fiduciaries, appoint the fiduciaries and make provision as to their bond. The subscription of the instrument by the testator, the attestation clause appended to it and the signatures of the witnesses are not effaced or disfigured in any way. Directly beneath the signatures of the subscribing witnesses to the attestation clause, is this text in the handwriting of deceased: " The change of this will, was made by me, on this Day of Sept. 19th, 1942. Angelo G. Traversi." Between the obliterated text of the fourth paragraph and the text of the fifth paragraph there is inserted in the writing of deceased (apparently as a substitutionary provision) the following: " Julia Calise, and Her step sister Grace Intorcia. Married to my son Philip should have the one thousand ($1,000.) each as specefied [*sic*] — also, to my Daughter Clotilde Traversi, married Briamonte." This change in the instrument is conceded to be

ineffectual both under the law of Virginia and under the law of New York.

On the proof taken the court finds that the obliterations and canceling marks on the instrument as it now exists were made by deceased himself while he was physically present in Virginia and while he was legally domiciled therein. The court finds that such obliterations and cancellations were made by deceased with the express intent and for the express purpose of revoking each and every of the provisions on which the canceling marks appear. It is clear that the acts of deceased are wholly ineffectual under New York law to accomplish his declared purpose (Decedent Estate Law, § 34; *Lovell* v. *Quitman,* 88 N. Y. 377, 379–381; *Matter of Tremain,* 282 N. Y. 485, 491).

The fact that deceased intended to annul all *dispositive* provisions in the instrument does not compel a holding that he intended to revoke the entire instrument. As already noted he left untouched many provisions in the will. The New York law is that a will may be a valid instrument entitled to probate even though it contains no dispositive clauses and merely appoints fiduciaries (*Sisters of Charity* v. *Kelly,* 67 N. Y. 409, 415; *Matter of Maccafil,* 127 App. Div. 21, 23; *Matter of Emmons,* 110 App. Div. 701, 705; *Matter of Webb,* 122 Misc. 129, 134). There is no suggestion that the law in other jurisdictions is otherwise. In any case, deceased affirmatively showed that he did not intend to revoke the will wholly because he interpolated between the fourth and fifth paragraphs language designed to make a gift to the person named in the interpolated text. It follows therefore that the will as a whole is not revoked and the question thus narrows itself to the question whether the law applicable to this instrument requires this court to give effect to the intended partial revocation.

Decision of that question requires a preliminary determination as to what law is to be applied. If it be New York law the matter needs no further discussion. The instrument must be admitted in its original text. So, it must first be determined whether the law of Virginia can be considered by the court. On that subject it is necessary to look at the provisions of our Decedent Estate Law. In sections 22-a and 23 of that Law there is direction to admit to probate wills executed without the State if the execution followed the mode prescribed in the place where executed or where the testator was domiciled. Section 24 of that Law says: " The right to have a will admitted to probate, the validity of the execution thereof, or the validity or construction of any provision contained therein, is not

affected by a change of the testator's residence made since the execution of the will." Section 25 of the Law also is pertinent because of the reference in it to the two prior sections. Since here we are dealing with an instrument executed in this State in accordance with the laws of this State by a person domiciled in this State and have the additional fact that deceased died a resident of this State, the question is sharply presented whether the terms of section 24 of the Decedent Estate Law permits the application to this will of the law of Virginia where deceased was domiciled at the time the acts of attempted revocation were performed by him.

In *Matter of Duke* (181 Misc. 529) this court had occasion to deal with a propounded instrument executed in Virginia by a testatrix then domiciled there. At the time of her death such testatrix was domiciled in this State and the question was whether the law of Virginia could be applied to save gifts for collaterals of a deceased legatee who could not take under our section 29 of the Decedent Estate Law but who could take under the statutes of Virginia. In the cited case the court detailed the history of section 24 of the Decedent Estate Law. That history is immediately pertinent to the question here. Since the history is long a restatement of it would expand this decision beyond permissible limits and reference to it must be had by resort to the cited case. It suffices here to quote only the summary of the court's conclusions respecting the section as such conclusions were applicable to the problem then before the court. '' This history of section 24 of our Decedent Estate Law shows that in its origin it was intended to be a remedial statute. It must therefore be given a liberal construction. It is natural that most of the litigations that have arisen in respect of it have concerned the mode of execution of the will in controversy rather than the tenor of the will. The statute however deals with construction as well as with validity and with the right to probate. The original text of 1876 used the phrase: ' nor shall the construction thereof be altered '. The Code of Civil Procedure and the Decedent Estate Law say ' the validity or construction of any provision contained therein, is not affected '. The intent of these texts is to require the courts of this State to save the testamentary wishes and plans of a deceased if that is possible. The text not only makes applicable to the *factum* of the will the provisions of the State in which it was executed, but it also makes applicable any pertinent law of the State of execution which affects construction." (Pp. 534–535.)

Dealing with the section as a remedial act the court now concludes (1) that proof of and consideration of the acts done by deceased while he was domiciled in Virginia are permissible and (2) that such acts must be viewed in the light of the law of Virginia as if the will were propounded there. Examination of the Virginia law on partial revocation discloses that the rule there applicable differs from our own. The statutes in Virginia appear to be patterned on the Statute of Frauds (29 Car. II ch. 3, § 6) and the Wills Act of Victoria (7 Wm. IV & 1 Vict. ch. 26, § 20). The first cited act provided in negative terms that " no devise * * * nor any clause thereof * * * " should be revoked except by a subsequent will or by certain specified acts manifest upon the face of the will. The second cited act uses the words " No will or codicil, or any part thereof ". The Virginia statute is found in section 5233 of the Code of Virginia of 1942. In that State as in other States where statutes of similar content are in force it is generally held that a will may be revoked in part by canceling or destroying one or more clauses with an intent to revoke such clauses but without intent to revoke the entire will (1 Page on Wills, § 440, and cases cited). Though there has been found no definitive ruling by the highest court in Virginia dealing with partial revocation of other than holographic wills, the dicta of the court and the rationale of certain decisions confirm the testimony of an expert who testified to the law of Virginia. That testimony is that partial revocation by obliteration is recognized as an effective act under the law of Virginia. The cases cited by the expert support his testimony (*Malone* v. *Hobbs*, 40 Va. 346; *Harris* v. *Wyatt*, 113 Va. 254, 259; *Wilkes* v. *Wilkes*, 115 Va. 886; 21 Va. L. Rev. 342, 347).

While in the law of conflict of laws on the revocation of a will the general rule appears to be that the law of the domicile at the time of death determines the effectiveness of an act of revocation (Restatement, Conflict of Laws, § 307; 2 Beale on Conflict of Laws, § 307.1), such rule is subject to modification by statute. There is express authority, too, for the view that revocation is controlled by the law of the testator's domicile at the time of the occurrence of the act or event affecting the instrument if such act or event under such law operates to revoke the will at once (4 Page on Wills, § 1646; Thompson on Wills [2d ed.], § 94; 34 Harv. L. Rev. 768). The common-law rule in this State was that the law of the domicile at the

date of death controlled (*Moultrie* v. *Hunt,* 23 N. Y. 394; *Dupuy* v. *Wurtz,* 53 N. Y. 556, 560). The formulation of the rule in *Moultrie* v. *Hunt* (*supra*) stirred professional and lay opinion to such degree that remedial legislation was undertaken and became effective in 1876. The reactions of the Bar and public to that decision is outlined in detail in *Matter of Duke* (181 Misc. 529, *supra*). The now extant text of the Decedent Estate Law, sections 22, 23, 24 and 25, have root in the revolt against the common-law rule which followed its pronouncement.

Reference made herein to section 22-a and 23 of the Decedent Estate Law is pertinent in relation to the operation of section 34 of the same Law which governs revocations. While section 34 says that a will can be revoked only in accordance with our Statute of Wills there can be no doubt that the operative effect of sections 22-a and 23 is to permit revocation by an unattested holograph if such holograph be executed in a State which recognizes such instruments as valid (*Matter of Logasa,* 161 Misc. 774; Decedent Estate Law, § 25). In other words, the literal text of section 34 is subject to exceptions.

In considering the acts which constitute a revocation it is to be noted that certain of them operate immediately as such while others become effective only at death. Revocation by the act of the testator, either by separate testamentary instrument or by an act manifest upon the face of the will, usually becomes effective at once and extinguishes the revoked provision (assuming the act is performed in a State permitting such act) so completely that it cannot be revived merely by an annulment of the revocation (34 Harv. L. Rev. 768, 770). The decisions on revocation can in a degree be reconciled or at any rate the pattern of the decisions can be recognized when this time factor is taken into consideration.

Analysis of the cases discloses an apparent dearth of authority as to the effectiveness of an act performed by a testator upon a will which operates as a revocation in whole or in part under the law of the place of performance of the act and of his then domicile although such act would not be given like effect if performed in the State where he was domiciled at the time of his death (2 Beale on Conflict of Laws, § 307.1, and cases there cited; 4 Page on Wills, § 1646; Thompson on Wills [2d ed.], §§ 94, 175; 68 C. J., Wills, § 531, p. 827). Against the background of the cases dealing with other types of revocation and in view of the public policy of this State expressed in sections 22-a, 23

and 24 of the Decedent Estate Law there seems imperative the recognition in our courts of a revocation of a will effectively made under the law of the place where the testator was then domiciled and where the act took place. No significance should be attached to the fact that deceased executed his will in New York rather than in Virginia. Our remedial statute should not be given so narrow a construction as to make that point of any consequence. The will was executed with formalities required under the laws of both States and could have been probated in either jurisdiction. No reasonable distinction can be drawn between a will originally executed in the foreign State where the revocation occurred and a will executed elsewhere but entitled to probate there.

Our statutes say that a will must be admitted to probate here if executed with the formalities required by the law of the testator's domicile. If a testator after executing such a will thereafter partially revokes it by an act which operates under the law of his then domicile as an immediate partial revocation our courts cannot say that they will recognize the first testamentary act and refuse to give effect to the second one. Neither logic nor reason would support such a policy. In the case of a person domiciled in Virginia who has there performed an act recognized as affecting his will our statute requires that we validate his testamentary plan as it is constructed by him under the law of his domicile at the time he acted upon the instrument. Full effect can be given to our remedial statutes and to the public policy of the State declared therein only by holding that a will valid in a foreign State where the testator was then domiciled and there partially revoked by an act which under the law of the State of his domicile deletes the revoked provision from the will is to be admitted to probate in this State in the form in which it would have been admitted under the law of the domicile at the time of the revocation. Accordingly the court holds that the acts of deceased in Virginia effected a partial revocation of the propounded instrument which this court will validate by its decree.

Since the court holds that the will was not wholly revoked and since issues are raised by objections which require a trial, the matter is set for further hearing before the court on the 5th day of September, 1946, at 2:00 o'clock.